Good morning, Your Honors. Morgan Russell for Petitioner Cesar Alcaraz-Enriquez. There are two main issues in this petition. First is the agency's particularly serious crime determination. The government argues that the court lacks jurisdiction to consider petitioner's challenge that the agency's determination was legally inadequate and therefore legally erroneous. That is — we know that's not correct. Under the very case that the government cites and in which this Court deferred to the board's holding in matter of NAM, that NIJ can consider all reliable information making the particularly serious crime determination. Well, what the government is alleging, as I understand it, is that a particular serious crime is something that is given to the IJ to determine and it's an abuse of discretion review. Right. And therefore, you have no right into this Ninth Circuit because it's an abuse of discretion review.  That's what they're saying, and that's wrong. Well, why not? Why? Because 12 — ADOC 1252a2d specifically provides for jurisdiction for legal challenges for the court to consider questions of law or constitutional issues. You're saying it's a legal issue? It's a legal issue whether the agency's analysis, as we argue, was legally erroneous and deficient because there was no adverse credibility determination. We know that. I appreciate that argument, and that's why I wanted you to get you there, because I think that's where you are. Well, I was — I'm going at that. So then at that point, we're at whether there was credibility determination made, right? Right. Well, why is it when the IJ says Petitioner was credible as far as testifying to the harm he suffered while in the custody of the police, why does that not say, and Petitioner wasn't credible for anything else? Well, because it doesn't say that. And this Court has said — But that's the only time that he is credible. No, it doesn't. You're changing it. He says he was credible as far as his description of his past torture. He doesn't say he wasn't credible as to anything else. There's lots of other things that he testified to, including what happened in the incident with his mother and his child. Well, I understand he testified to other things. My only worry is that I look right in the record and the IJ says, well, I think he's credible to the harm he suffered, but it doesn't say anything else about his other testimony. Exactly. And therefore, why is it credible? Please don't interrupt the judge. I think you're not helping yourself when you're trying to interrupt what the judge is asking for. That's fair. I'm sorry. So listen carefully, let it sink in, and then answer. Okay? Sure. So I guess I got your answer. So let's go to the second. If, in fact, this is not a credibility determination, then I guess the credibility determination would not necessarily have been made. But as I understand, this, if you will, could be refuted by record evidence from his guilty plea and his conviction. As long as you're only relying on the record evidence of the guilty plea and the conviction, then it's okay. So I said, all right, in this case, the respondent was convicted of particularly serious crime. The nature of the crime was domestic violence, and that's serious. The elements of the crime include willful infliction upon the person and corporal injury results in a traumatic condition. That doesn't seem to get away from the record evidence at all. And even the probation officer's report is in the record. That's not the issue. The issue is that if this Court in Anaya-Ortiz itself, which is the case in which it deferred to that NAM standard that all reliable information can be considered, said that specifically incorporated this rule of law that the Court has pronounced again and again, that absent an explicit, explicit adverse credibility determination, the Petitioner's testimony must be credited. Well, just a minute. That's not exactly the rule. The rule is that that would be so unless you only consider the record evidence of the guilty plea and conviction, which I'm reading you exactly what they said. Oh, but that's not the analysis that happened here. This wasn't a strictly elements-based analysis, a particularly serious crimes-based analysis. Why? Because the I.J.'s decision was explicitly based on the probation officer's report, not on the elements of the conviction. Well, no. Frankly, if we read what the I.J. said, the only time we get to the probation report is after he said what he thinks, and then he said, and also we've got additional evidence from the probation officer report. In reading exactly what the I.J. said, he doesn't make that the basis. The basis is the record evidence of his guilty plea and conviction. Then he adds the probation report. Look at what he says. Read exactly. Which page are you looking at here? Well, I'm looking at what the I.J. says, what the I.J. said when he made his decision here. I would point you to A.R. 94 in the I.J.'s decision. I will point to A.R. 60. A.R. 60 says, the court concludes respondent was convicted of a particularly serious crime. In making this finding, the court finds the nature of the conviction, domestic violence, is serious. The elements of the crime include willful infliction, and that corporal injury results in a traumatic condition. Thus, the elements in and of themselves are serious. The facts and conditions involve the use of force and violence. The sentencing court further found the crime serious that imposed two-year period of incarceration.  The court documents it. No, because two pages earlier, he's in his actual analysis. That's kind of a concluding paragraph. Two pages earlier, he's already talked about the factual assertions in the probation officer's report at length. That's at A.R. 94. I think the I.J.'s decision is in the record a few times. But two pages before, what you were looking at, he goes through in detail those things. I think where he says the elements are serious, that's the first stage of the NAM analysis where you determine whether the elements bring it within something that could be deemed to be a particularly serious crime. No question about that. Exactly. So that's not the entire. That's not the end of the analysis. Well, but the problem comes in that from looking, and that's why I got to A.R. 60. In looking what the I.J. really tells me he's doing, he only throws in all this stuff about the probation report after he's already made his determination. Then he throws in the probation report. I don't think that's a correct reading. It's a two-step analysis. Do the elements – are the elements serious enough to bring it within the factual analysis, and then the factual analysis of the actual circumstances? It's different from the regular categorical analysis in that way. The probation officer's report was, I think, quite clearly the basis for his factual determination that the underlying crime itself, based on the actual incident, the occurrence, was serious. So, then, what do I do if I swallow what you have to say? You remand for the I.J. to conduct, in the first instance, the necessary adverse credibility determination. Oh, therefore, you want me to remand? I mean, I'll be fair. I've seen these before. It seems to me that if I remand for what you want, the I.J. will say in two sentences, this guy is incredible, and you'll be done. Well, but the Court can't fill that in for the I.J. It said that again and again. It's not this Court's role. It can't fill in that gap in the analysis. He testified – he was cross-examined specifically at AR 284 to 286, I believe, about what happened during the incident. He testified that the description in the probation officer's report was not true. The I.J. could have said that he found him not credible during that section of cross-examination for any number of reasons we could imagine, but the I.J. has to give specific cogent reasons for doing so, and that didn't happen here. Under this Court's case law, it has to go back because of that legal error over which this Court clearly has jurisdiction. Do you want to say anything about your CAD claim? Yes, Your Honor. So the I.J.'s only basis for his conclusive reassertion that there wasn't past torture here was a cite to a matter of J.E., which the I.J. cited as saying that police brutality does not amount to torture. Well, but it's my understanding that this is a mental illness problem, right? Well, it's the – it's the – it's the – I mean, when I look at what the BIA did, the BIA, which is what I'm looking at, did not find that your client was tortured at the hands of Mexico based on his mental illness. And what they're really saying is the facilities in Mexico are poor. I understand that. That does not, however, amount to torture. The actor must intend the actual consequence of the conduct. Right. I've read – that's what they say. They don't address at all the past torture by Mexican police. That argument was squarely presented in his brief to the BIA, so it was legally erroneous for them not to consider that. Why did they have to consider that? Because this Court has held repeatedly – What are we on here? Aren't we under CAT? Yeah, we're under CAT. And we're looking at prospective torture, not past. Well, this Court has repeatedly said that past torture is the principal factor that the Board must look to because it is the best predictor of whether someone will be tortured in the future. His claim is – and this Court has said that you must consider the aggregate risk from all sources in a CAT claim. The claim is that if he goes back to Mexico, he repeatedly wandered off and got lost there off his medications with no family members to take care of him. If he ends up lost again or in an altercation like when he wandered up to the border, if something like that happens where he falls into the hands of Mexican police, he could be beaten for hours again like he was before and then also likely end up in a Mexican state-run detention facility where AR-373, the State Department report, says that there is widespread physical and sexual abuse by staff members. That is intentional – physical and sexual abuse is intentionally inflicted by public officers if that happens to him. That all had to be considered and none of it was. Okay. Thank you very much. Thank you. Counsel. Mr. Conway. Good morning, Your Honor. May it please the Court. My name is Kevin Conway and I'm here on behalf of the U.S. government. The crux of the petitioner's claim is that because there's no explicit adverse credibility determination, it should be credited – his testimony should be credited as true. That is not entirely true. There was no adverse credibility determination in this case, but that's not the end of the analysis. The reason being is that this Court has held – You're agreeing that there is no adverse credibility determination. No, I'm saying that is what the Petitioner's Counsel has – Are you agreeing? I'm not – I wouldn't say that there was no adverse – there's no explicit adverse credibility. I guess I'm trying to figure out if, in fact, there's an adverse credibility determination. Somebody usually says this is the reason you're not credible, and at that point the petitioner has to be confronted, and then the I.J. has got to say something about, well, we confronted him, but nonetheless there is no basis. That didn't ever happen here.  It wasn't an adverse – Again, it doesn't seem to me – I mean, even though I was trying to see what counsel would suggest, I'm worried that there was no credibility determination. And without a credibility determination, where are we? Well, there doesn't – this is not an adverse credibility case. This is a case about burden of persuasion, burden of proof. I understand that. But if there is no adverse credibility determination, then I've got to take his stuff as true. The case law does indicate, yes, you have to take his stuff as true. However, that doesn't – Frankly, what he said in his statements are contrary to the probation report. That's correct as well, Your Honor. So then how does the I.J. get away with, as your opposition argues, relying on the probation report? Well, because what the immigration judge has the opportunity to do is to look at other evidence outside or inside the record of – He can't look at other evidence if it's contrary to what the petitioner has suggested because he's already said the petitioner is true. He can't look at contrary evidence and weigh that in. What case says that? I mean, I don't think you'll find a case that says that. The bottom line is if the credibility determination had been made and he'd said he wasn't credible, he could have looked at anything he wanted. But once, having not made it, it seems to me that counsel makes a great argument, and that is if no credibility determination is made, you're stuck, unless you can say the only thing you're looking at is the record evidence of the guilty plea and conviction. And I took him through that, and he says no. You look at what it is here. There's a probation report that got right in the middle of this, and the probation report is directly contrary to what my client said and therefore should not have been relied on. How do you respond? Well, in Ray NAM and in the case that adopted that in IOTs, the courts decided that any reliable evidence that the court could rely on, the IJ could rely on any reliable evidence. But that doesn't even hit the issue. The issue is that if you've already said his client, his testimony is true, if you're already giving him that make, then at that point you can't, it's not reliable evidence if it contradicts what he said. Well, I think that the analysis goes beyond whether or not his testimony is true. That doesn't stop the analysis. Well, it stops the analysis for all contrary evidence. You can look at 411 other things that don't contradict that evidence, but once you've said that what his client says is true, you can't add any other evidence you want that's contradictory to it, or at least I didn't find the case. I think that our argument is that because there was evidence that was, because the individual's, the petitioner's testimony or testimony at the hearing did not meet his burden of persuasion for the immigration judge, that that's why he was able to look at other evidence including the probation report. It was contrary to what he said. That's correct, Your Honor. It is contrary to what he said. In what respect did the petitioner's evidence not carry his burden of persuasion? Well, because of the evidence that was looked at by, that was in the probation report and also the immigration judge's determination based on the record of conviction that the elements of the offense of which he was convicted were serious. Well, if the probation report wasn't properly considered, is it, the finding wasn't made simply on the elements of the offense, the guilty plea. It was the guilty plea plus the probation report, don't you think? Well, I think that Judge Smith's point was well made earlier where he said that the immigration judge did not rely on the probation report until after he made the determination that the elements of the offense were serious, that the facts and circumstances of the offense were serious, and that the sentencing court imposed a sentence of two years, making it, showing that the sentencing court itself. So the probation report was a make-wait argument? Correct, Your Honor. What it comes down to is a weighing of the evidence in this case. We could turn this around and say even if, I mean, you could consider even if the probation report or the court, the lower court, the sentencing court in the criminal case, had they believed everything that Mr. Alcarez testified to in the immigration court, they could still make the same determination that it was a particularly serious offense or a particularly serious crime based on the fact that they found that he was guilty of the offense. He's never contested the fact that he was charged with the offense, that he was guilty of the offense, or that he was given two years' incarceration for the offense, all making it clear that it was considered a particularly serious crime. But it would have been really helpful if he hadn't added in all that stuff about the probation report, wouldn't it? I think that it . . . Because adding in the probation report gives him a fair argument that you made that the basis and it's contradictory to what my client said. That's what I was trying to get him to concentrate on, and I heard what he said. Now I'm hearing what you say. I mean, if I'd have been writing this knowing full well that I'd already said this guy was credible, I wouldn't have added the probation report, which contradicted the very comments, the very things he said, which I've already said are credible, and then make my determination based on that. I can't do that, can I? Well, the immigration judge said the petition was only credible with regard to one particular thing, and that was with regard to the torture in the future. I understand that, but you and I both went through that a minute ago.  You're correct, Your Honor. It's not a specific, explicit, adverse credibility determination, but he didn't rely on that in determining that the offense was particularly serious. He relied on that only in regard to the cat claim. I appreciate your argument. Thank you. Thank you. I don't know if these others have more. No further questions. Thank you very much, Your Honor. Thank you very much. The case of Ankarath v. Sessions is submitted, and we thank counsel for their presentation.
judges: Bea, N.R. Smith, Nye